The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 28, 2018, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: June 28, 2018



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| In re: | ) | Case No. 10-20804 |
|---|---|---|
| | ) | |
| EARLENE W. HANCOCK, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |
| In re: | ) | Case No. 16-12120 |
| | ) | |
| EARLENE W. HANCOCK, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OF OPINION[1]

On April 26, 2018, the Court held a hearing on the Court's order for creditor Karl C. Johnson ("Johnson") to appear and show cause why he should not be held in civil contempt for violating the discharge injunction entered in the debtor's 2010

---

[1] This Opinion is not intended for official publication.

bankruptcy case (Case No. 10-20804, Docket No. 26; Case No. 16-12120, Docket No. 40).  This order arose from a motion filed by the debtor, Earlene Hancock, alleging that Johnson had repeatedly contacted her to collect on a discharged debt and sent her a letter on January 16, 2018, threatening further action after receiving a letter from the debtor's attorney (Case No. 16-12120, Docket No. 37).  For the reasons that follow, the Court holds that Johnson did not willfully violate the automatic stay entered in the debtor's 2016 bankruptcy case but knowingly violated the discharge injunction entered in the debtor's 2010 bankruptcy case.  Accordingly, the Court awards the debtor's attorney $800 in attorney's fees but declines to award punitive damages.

## JURISDICTION

This Court has jurisdiction to determine this matter under 28 U.S.C. § 1334 and General Order Nos. 84 and 2012-7 by the United States District Court for the Northern District of Ohio.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTS AND PROCEDURAL HISTORY

On November 1, 2010, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Case No. 10-20804).  The debtor included in her Schedule F a $52,000 unsecured debt owed to Johnson for a November 2008 personal loan in the amount of $52,000.  The docket indicates that on

November 4, 2010, the Bankruptcy Noticing Center sent an initial notice of the debtor's bankruptcy by first class mail to Johnson at 1722 West 28th Street, Cleveland, Ohio 44113-3079 (Case No. 10-20804, Docket No. 9). This is the same address that Johnson himself provided in his most recent filing with the Court on April 14, 2018. The docket also indicates that on February 11, 2011, the Bankruptcy Noticing Center sent notice of the debtor's Chapter 7 discharge by first class mail to Johnson at the same address (Case No. 10-20804, Docket No. 19).

Although Johnson's debt was discharged in the debtor's 2010 bankruptcy case, Johnson continued to contact the debtor in order to collect on the discharged debt. On April 19, 2016, the debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code (Case No. 16-12120). On December 27, 2017, the debtor's attorney wrote to Johnson regarding the debtor's previous Chapter 7 case and the prohibition against further attempts to collect on the discharged debt. Johnson did not respond to the debtor's attorney, but instead sent a letter directly to the debtor on January 16, 2018, with the following language:

> Earlene:
>
> The arrival of the letter from your lawyer suggests that you are not willing to resolve this issue in an amicable manner. You may be sorry.
>
> Let me be clear. You are in no danger to your person. I do not believe in violence. Even if I never receive what you owe me, I will

> not get violent. I will not retaliate against you, your house, your car, your dog, your clothing, or anything you own.
>
> But there are non-violent methods and I intend to take them. Count on it.

(Case No. 16-12120, Docket No. 37).

Following this communication, the debtor moved for Johnson to appear and show cause in her 2016 bankruptcy case and noticed a hearing for March 1, 2018 (Case No. 16-12120, Docket No. 37). Johnson responded to this motion (Case No. 16-12120, Docket No. 39), but did not appear at the hearing on March 1, 2018. At the hearing, the Court indicated that it would treat the debtor's motion and Johnson's response as having been filed in the debtor's 2010 bankruptcy case because the alleged conduct, if established, would constitute a violation of the discharge injunction entered in Case No. 10-20804. The Court also issued an order for Johnson to appear at a hearing on April 26, 2018, and show cause why he should not be held in civil contempt for his failure to comply with the discharge injunction (Case No. 16-12120, Docket No. 40). Johnson appeared at the hearing and indicated his belief that he was not scheduled as a creditor in the debtor's 2010 bankruptcy case and was never notified of the debtor's discharge. The Court explained to Johnson that Johnson's January 16, 2018, letter to the debtor and other efforts to collect on a discharged debt were improper. The Court cautioned Johnson that it was imperative that Johnson stop doing anything that

could be considered as collection on a discharged debt or harassment of the debtor. The Court gave the debtor until May 10, 2018, to supplement her motion to show cause with any request for additional relief, and gave Johnson until May 24, 2018, to respond.

On May 8, 2018, the debtor moved for payment of $800 in attorney's fees and $5,000 in punitive damages for Johnson's violation of the discharge injunction entered in the 2010 bankruptcy case and/or violation of the automatic stay entered in the debtor's 2016 bankruptcy case (Case No. 16-12120, Docket No. 46). Johnson did not respond. Nor did Johnson attend the June 7, 2018, hearing on the debtor's request for attorney's fees and punitive damages. At the hearing on June 7, 2018, the Court indicated that it would award $800 in attorney's fees and an additional $800 in punitive damages.

## DISCUSSION

This Court has authority to impose sanctions on offending parties and counsel. *See Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 552 Fed. Appx. 401, 413 (6th Cir. 2013) (citing *Mapother & Mapother, PSC v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.")); *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001); *In re*

5

*French Bourekas, Inc.*, 175 B.R. 517, 525 (Bankr. S.D.N.Y. 1994) (noting that bankruptcy courts possess power to impose sanctions as inherent authority and by virtue of 11 U.S.C. § 105(a)). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Federal courts have held that this provision authorizes bankruptcy courts to impose a variety of sanctions against litigants in response to their wrongful conduct before the court. *In re John Richards Homes Bldg. Co.*, 552 Fed. Appx. at 412. However, a court must exercise care when considering the imposition of sanctions. *In re Downs*, 103 F.3d at 478 ("When a court metes out a sanction, it must exercise such power with restraint and discretion. The sanction levied must thus be commensurate with the egregiousness of the conduct.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

In the debtor's motion to show cause and motion for payment of legal fees and request for damages, the debtor asserts that Johnson's actions violate both the automatic stay entered in the debtor's 2016 bankruptcy case and the discharge injunction entered in the debtor's 2010 bankruptcy case. The Court will first

6

10-20804-aih    Doc 30    FILED 06/28/18    ENTERED 06/28/18 15:11:44    Page 6 of 16

address the debtor's allegation that Johnson willfully violated the automatic stay entered in the debtor's 2016 bankruptcy case.

## I. WILLFUL VIOLATION OF THE AUTOMATIC STAY

The filing of a bankruptcy petition gives rise to the automatic stay, which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). A Court can award damages for violations of the automatic stay, pursuant to subsection 362(k)(1):

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Under this subsection, the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the action taken was in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *See Collett v. Lee Oil Co. (In re Collett)*, Nos. 13-8033, 12-61190, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014) (citing *Barclay v. Reimer & Lorber Co. (In re Barclay)*, 337 B.R. 728, 2006 WL 238139, at *5 (B.A.P. 6th Cir. Feb. 1, 2006) (table)); *In re Skeen*, 248 B.R. 312, 316-17 (Bankr. E.D. Tenn. 2000).

In the debtor's motion to show cause, the debtor asserts that "[n]otwithstanding [the discharge of his debt in 2011], Mr. Johnson has attempted to contact the debtor for the purposes of collecting a discharged debt" (Case No. 16-12120, Docket No. 37). In the debtor's motion for payment of legal fees and request for damages, the debtor's attorney submitted a time sheet indicating that Mr. Johnson contacted the debtor by telephone in 2011, 2012, 2017, and 2018, even though both the debtor and the debtor's attorney advised him that his debt was discharged in 2011 (Case No. 16-12120, Docket No. 46). Based on the evidence presented, Johnson's communications in 2017 and 2018 constituted violations of the automatic stay entered in the debtor's 2016 bankruptcy case.

To prove that Johnson's violations were willful, the debtor must show that Johnson "knew of the automatic stay and that . . . [his] actions were intentional." *Cousins v. CitiFinancial Mortg. Co. (In re Cousins)*, 404 B.R. 281, 289 n.7 (Bankr. S.D. Ohio 2009) (citing *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687-88 (B.A.P. 6th Cir. June 4, 1999)). In this case, the debtor has not presented evidence suggesting that Johnson was aware that the debtor had filed for bankruptcy in 2016 and had knowledge of the automatic stay. Since the debt owed to Johnson was discharged in the debtor's 2010 bankruptcy case, Johnson was not listed as a creditor in the debtor's 2016 bankruptcy case and thus did not

8

receive notice of any related proceedings. In addition, the December 27, 2017, letter that the debtor's attorney sent to Johnson mentions the debtor's 2010 bankruptcy case, but does not mention the debtor's 2016 bankruptcy case. (Case No 16-12120, Docket No. 37).

Therefore, the Court finds that Johnson's attempts to contact the debtor after the debtor commenced her 2016 bankruptcy case did not constitute willful violations of the automatic stay entered in that case. Accordingly, the Court declines to award the debtor damages or attorney's fees pursuant to 11 U.S.C. § 362(k)(1).

## II. VIOLATION OF THE DISCHARGE INJUNCTION

Section 524 of the Bankruptcy Code provides in pertinent part:

> (a) A discharge in a case under this title—
> . . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived
> . . . .

11 U.S.C. § 524. A debtor may bring an action in civil contempt if a party violates the discharge injunction of § 524(a)(2). *See In re Humbert*, 567 B.R. 512, 515 (Bankr. N.D. Ohio 2017) (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417,

9

421-23 (6th Cir. 2000), and *Lover v. Rossman & Co. (In re Lover)*, 337 B.R. 633, 635 (Bankr. N.D. Ohio 2005)).

> In order to support a motion for civil contempt, [the movant] has the burden of establishing by clear and convincing evidence that [the non-compliant party] violated a definite and specific order of the court requiring [the non-compliant party] to perform or refrain from performing a particular act or acts with knowledge of the court's order. . . . There is no requirement to show intent beyond knowledge of the order.

*CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015) (internal citations and quotation marks omitted); *In re Stewart*, 499 B.R. 557, 773 (Bankr. E.D. Mich 2013) (quoting *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)). *But see SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 544-45 (7th Cir. 2012) (Posner, J.) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991), and other cases) (suggesting in dicta that the large body of case law requiring clear and convincing evidence to prove civil contempt "is in tension with the Supreme Court's insistence on a presumption in favor of the less onerous standard of preponderance of the evidence in federal civil cases").

"Once the movant establishes his *prima facie* case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Elec. Workers Pension Tr. Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379

10

(6th Cir. 2003) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). When evaluating whether the noncompliant party was unable to comply, the Court considers whether the noncompliant party " 'took all reasonable steps within [his] power to comply with the court's order.' " *Id.* (quoting *Peppers v. Berry*, 873 F.2d 967, 968 (6th Cir. 1989)).

"If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *In re Caranova*, 347 B.R. 259, 267 (Bankr. N.D. Ohio 2006) (citing *Chambers v. Greenpoint Credit (In re Chambers)*, 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005)). Additionally, the Court may award "attorney's fees to a debtor injured by a contemptible violation of the discharge injunction." *In re Chambers*, 324 B.R. at 329-30 (discussing *Miller v. Chateau Cmtys., Inc. (In re Miller)*, 282 F.3d 874 (6th Cir. 2002)). Generally, damages in contempt proceedings are meant to vindicate the affront to a court order, and not to compensate private harm. *See In re John Richards Homes Bldg. Co.*, 552 Fed. Appx. at 415 ("[B]ankruptcy courts do not have a general statutory power to impose serious noncompensatory punitive damages"). The modern trend in civil contempt proceedings brought for violations of the discharge injunction is for courts to "award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the purposes of the discharge injunction, a

11

debtor may be entitled to reasonable attorney's fees." *Lassister v. Moser (In re Moser)*, Nos. 09-8067, 09-8068, 2010 WL 4721239, at *5 (B.A.P. 6th Cir. Nov. 23, 2010).

As noted above, the docket in the debtor's 2010 bankruptcy case indicates that on November 4, 2010, the Bankruptcy Noticing Center sent an initial notice of the debtor's bankruptcy by first class mail to Johnson at 1722 West 28th Street, Cleveland, Ohio 44113-3079 (Case No. 10-20804, Docket No. 9). This is the same address that Johnson himself provided in his most recent filing with the Court on April 14, 2018. The docket also indicates that on February 11, 2011, the Bankruptcy Noticing Center sent notice of the debtor's Chapter 7 discharge by first class mail to Johnson at the same address (Case No. 10-20804, Docket No. 19). Despite receiving communications at this address, Johnson continued to contact the debtor for the purpose of collecting on the discharged debt in 2011, 2012, 2017, and 2018 (Case No. 16-12120, Docket No. 46). When the debtor's attorney contacted Johnson to remind him that his debt was discharged, Johnson again attempted to communicate with the debtor by sending a letter threatening to continue collection efforts. While Johnson indicated that he did not receive notice that he was scheduled as a creditor in the debtor's 2010 bankruptcy or that the debt owed to him was discharged, Johnson's own January 16, 2018, letter to the debtor

12

expressly acknowledges receipt of a letter from the debtor's attorney, which noted the debtor's bankruptcy discharge. The Court finds by clear and convincing evidence that Johnson violated a clear order of the Court—namely, the order granting the debtor a discharge in the debtor's 2010 bankruptcy case under 11 U.S.C. § 524.

### III. DEBTOR'S REQUEST FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

The debtor's motion for payment of legal fees and request for damages includes a request for $800 in attorney's fees. This figure is based on 3.2 hours of work by the debtor's attorney at a rate of $250. The Court will approve as reasonable an hourly rate of $225, which is the rate the debtor's attorney has indicated is his current hourly rate. *See, e.g.*, Rights and Responsibilities Statement, Case No. 18-13050, Docket. No. 4. In addition, the Court will add 0.3 hours for the attorney's attendance at the hearing on June 7, 2018, for a total of 3.5 hours at $225/hour, or $800, which the Court finds to be reasonable.

In addition to attorney's fees, the debtor requests $5,000 in punitive damages. In support of this amount, the debtor asserts that "[the] debtor was [severely] distressed and contacted counsel on numerous occasions" following Johnson's repeated attempts to communicate with her.

13

Although the Court initially indicated on June 7, 2018, that it would award $800 as punitive damages, upon further review the Court declines to award punitive damages to the debtor. The Court does not believe that punitive damages are appropriate in a civil contempt proceeding for violation of a discharge injunction. *See, e.g.*, *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001) (finding that "punishment is the purpose of criminal but not of civil contempt."). An award of punitive damages for a violation of a discharge injunction sounds in the nature of criminal contempt and therefore lies beyond the authority of the bankruptcy judge. *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990) (holding that bankruptcy courts have no inherent or statutory power to preside over criminal contempt trials); *Holley v. Oliver (In re Holley)*, 473 B.R. 212, 216 (Bankr. E.D. Mich. 2012) (collecting cases). The Sixth Circuit has expressly held that "bankruptcy courts lack the statutory authority to impose serious noncompensatory punitive damages. They also lack the inherent authority to impose such damages." *In re John Richards Homes Bldg. Co.*, 552 Fed. Appx. at 416. In support of this holding, the Sixth Circuit cited a general reluctance among other circuit courts to entrust bankruptcy courts with the power to impose punitive damages, the limited power of bankruptcy courts relative to

14

other Article III courts, and due process concerns arising from bankruptcy courts' limited jurisdiction. *See id.* at 415.

When the Court initially indicated that it would award $800 in punitive damages, the Court believed that the facts had also established a willful violation of the automatic stay under 11 U.S.C. § 362(k)(1), which expressly provides for punitive damages in appropriate cases. However, Johnson's lack of notice of the debtor's 2016 bankruptcy case means that any violation of the automatic stay was not "willful" and, therefore, no damages can be awarded under that provision, punitive or otherwise. In addition, the Court's show cause order only indicated the possibility of sanctions for civil contempt, not criminal. Thus, Johnson arguably did not receive the heightened procedural protections required for criminal contempt. *In re John Richards Homes Bldg. Co.*, 552 Fed. Appx. at 416. Finally, the Court believes that the award of attorney's fees and likelihood of additional sanctions for any future violations should provide an adequate deterrent going forward.

For these reasons, and in light of the Sixth Circuit's general reluctance to award punitive damages for violations of discharge injunctions, this Court declines to award any punitive damages.

15

## CONCLUSION

For the reasons stated above, the Court holds that Karl C. Johnson did not willfully violate the automatic stay entered in the debtor's 2016 bankruptcy case but knowingly violated the discharge injunction entered in the debtor's 2010 bankruptcy case. Accordingly, the Court awards $800 in attorney's fees but declines to award punitive damages. Karl C. Johnson is ordered to pay $800 to attorney Lee R. Kravitz, at 4508 State Road, Cleveland, Ohio 44109, by July 30, 2018.

IT IS SO ORDERED.